UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| FRED L. M., | ) |
| --- | --- |
| Plaintiff | ) |
| v. | ) No. 2:-19-cv-00159-GZS |
| ANDREW M. SAUL,<br>Commissioner of Social Security,[1] | ) |
| Defendant | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question of whether, following a remand by this court, the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the ALJ erred in assigning too little weight to the opinion of examining psychologist Jeffrey M. Wagner, Ph.D., and too much weight to that of the medical expert who testified at his post-remand hearing, James M. Claiborn, Ph.D. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 7-10. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2011, Finding 1, Record at 873; that, through his date last insured, he had the severe impairments of learning disability versus borderline intellectual functioning and alcohol use disorder, Finding 3, *id.*; that, through his date last insured, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P, Finding 4, *id.* at 874; that, through his date last insured, he had the residual functional capacity ("RFC") to perform work at all exertional levels with but with the following nonexertional limitations: he could understand and remember simple tasks and procedures and maintain attention in two-hour blocks, could not interact with the public but could interact with coworkers and supervisors in a normal work setting on an occasional basis with no tandem tasks or collaborative work, could adapt to routine changes, should not travel to unfamiliar places, should have a work setting limited to a few coworkers in the area, and could learn work by demonstration but not by reading instructions, Finding 5, *id.* at 879; that, through his date last insured, considering his age (52 years old, defined as an individual closely approaching advanced age, on his date last insured), education (illiterate but able to communicate in English), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 883; and that he, therefore, had not been disabled as of June 30, 2011, which was both his alleged onset date of disability and his date last insured for SSD benefits, Finding 11, *id.* at 884. The commissioner admits that the plaintiff has exhausted his administrative remedies, *see* Complaint (ECF No. 1) ¶ 3; Answer (ECF No. 8) ¶ 3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

## I. Discussion

The plaintiff's bid for remand hinges on whether, in weighing the opinions of Drs. Wagner and Claiborn, the ALJ erred in determining that the plaintiff's mental impairments did not satisfy the criteria of Listing 12.05(B) (intellectual disorder), as revised January 17, 2017. *See* Statement

of Errors at 9; Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 8-16; Record at 874-78. No such error has been shown.[3]

To meet Listing 12.05(B), a claimant must demonstrate each of the following: (i) IQ scores within a certain range;[4] (ii) "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two," of four domains of mental functioning;[5] and (iii) that "[t]he evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22." Listing 12.05(B).

The ALJ found that the plaintiff satisfied the first of the three requirements of Listing 12.05(B), explaining:

> The record does not contain any intelligence testing conducted prior to the date last insured of June 30, 2011. The [plaintiff] attended an evaluation with Dr. Wagner in June 2015, however, and was administered the WAIS-IV. He scored as having a Full Scale IQ of 54. The testing was considered valid by Dr. Wagner. At the hearing, Dr. Claiborn did not testify that it was his opinion that this score was invalid at the time of testing, but he did express reservations about the report in its entirety, and whether the IQ score would have been the same had it been performed at the date last insured, noting, for example, the history of alcohol use that could affect cognitive functioning over time. In the absence of earlier IQ testing, the Full Scale IQ score of 54 is found valid for the purposes of this finding.

---

[3] The plaintiff contends that the ALJ's acceptance of Dr. Wagner's opinion would have led her to conclude that the plaintiff's mental impairments met the criteria not only of Listing 12.05 but also of Listing 12.11 (neurodevelopmental disorders). *See* Statement of Errors at 9. However, as the commissioner observes, *see* Opposition at 8 n.4, the plaintiff offers no developed argumentation with respect to Listing 12.11, thereby waiving the point, *see* Statement of Errors at 9; *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citations omitted).
[4] A claimant must show "[s]ignificantly subaverage general intellectual functioning as evidenced by" either "[a] full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence" or "[a] full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence[.]" Listing 12.05(B)(1).
[5] The four domains of mental functioning are the ability to "[u]nderstand, remember or apply information[,]" the ability to "[i]nteract with others[,]" the ability to "[c]oncentrate, persist, or maintain pace[,]" and the ability to "[a]dapt or manage oneself[.]" Listing 12.05(B)(2).

Record at 875 (citation omitted).

However, the ALJ concluded that the plaintiff did not meet his burden of satisfying the second requirement and, therefore, did not meet or equal Listing 12.05(B). *See id*. at 875-78. Specifically, she determined that the plaintiff had shown no more than a "moderate restriction in understanding, remembering, and acquiring information, interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing himself." *Id*. at 876.[6]

In that context, she deemed "the testimony from Dr. Claiborn . . . instructive and persuasive regarding the nature and degree of the [plaintiff]'s deficits[,]" noting that, "[w]hile he did not treat or personally examine the [plaintiff], he was in the unique position of having reviewed the medical evidence of record in its entirety, while also having an understanding of agency rules and regulations." *Id*. at 875-76. She observed that Dr. Claiborn had reviewed the Wagner report, "including Dr. Wagner's conclusions that the [plaintiff] had marked to extreme limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace" but "testified that he had reservations about Dr. Wagner's conclusions, noting that he understood the full scale IQ score, but could not be confident that this was an accurate representation of the [plaintiff]'s functioning years prior to the date of testing." *Id*. at 876. She explained:

> In support of this, Dr. Claiborn cited to examples of the [plaintiff]'s adaptive functioning. He noted the [plaintiff] had a history of holding down a job, preparing his own meals, and going out in public to go shopping. He did note the [plaintiff] was a poor student and was illiterate. Dr. Claiborn's testimony that the evidence of record in its entirety showed evidence of adaptive functioning is persuasive.

*Id.*

---

[6] The ALJ elsewhere stated that the record overall revealed no more than a "mild limitation" in the four domains of adaptive functioning. Record at 875. However, nothing turns on the discrepancy. As discussed above, a moderate level of limitation also fails to satisfy the requirements of Listing 12.05(B).

5

The ALJ then detailed the record evidence that, in her view, supported the finding that the plaintiff had no more than moderate limitations in all four domains of adaptive functioning, noting, for example, that:

1. With respect to the domain of understanding, remembering, or applying information, the plaintiff had successfully worked for many years as a mechanic, describing "being able to fix cars after just looking at them[,]" and left one position that he had held for three years because he was laid off, "not because he was having difficulty managing the information." *Id.* (citation omitted). He also had been able to obtain a driver's license by having questions read to him, and his educational records had not shown "any involvement with special education or other classroom supports." *Id.* at 877 (citation omitted). While the plaintiff's lowest score in testing with Dr. Wagner was in the area of working memory, the totality of the evidence did not show a marked limitation in this domain, with "[t]he treatment notes, the [plaintiff]'s activities, and [his] work history combin[ing] to show that [he] had a moderate limitation in this area." *Id*.

2. With respect to the domain of interacting with others, the plaintiff's educational records indicated that "his primary problem was his inability to get along with others outside the classroom[,]" but his deficit did not rise to the marked level given that he spent time with his mother and brother, had been married multiple times, showing "both an ability to engage in relationships, as well as difficulty maintaining them[,]" socialized two to three times a week, was able to shop for groceries though he preferred to do so when few people were around, and had participated in some groups when admitted for alcohol detoxification and "was overall a neutral presence on the unit." *Id*. (citations omitted).

3. With respect to the domain of concentration, persistence, or pace, while the plaintiff did poorly in school, he was able to sustain work activity for many years as a mechanic, did not

lose any jobs due to difficulty maintaining the work, and was able to prepare meals, perform household repairs, manage his finances, and watch television. *See id*. While Dr. Wagner noted that the plaintiff had significant difficulty following short-term verbal instructions, he did not indicate that the plaintiff had difficulty concentrating on or persisting in tasks. *See id*. at 877-78.

      4.     With respect to the domain of adapting and managing oneself, the plaintiff again worked successfully for many years, was independent in daily activities such as personal care, meal preparation, and shopping, and spent "time alone to avoid arguing with others[,]" reflecting "his cognizance of this as an issue and his ability to regulate and manage his emotions." *Id*. at 878.

At Step 4, in assessing the plaintiff's RFC, the ALJ also accorded great weight to the Claiborn opinion, explaining that Dr. Claiborn (i) "noted that the [plaintiff] had a history of social problems, but that the record showed the ability to understand and apply information, as well as concentrate and maintain pace[,]" (ii) "cited to the [plaintiff]'s educational records, his work history, and his own reports of functioning[,]" (iii) "reviewed Dr. Wagner's findings, but went on to discuss how the examples of the [plaintiff]'s adaptive functioning found throughout the record were inconsistent with the extent of limitation identified by Dr. Wagner[,]" and (iv) "then provided specific abilities and limitations, which he supported directly with reference to the evidence of record." *Id*. at 881.

At Step 4, the ALJ again gave "little weight" to the Wagner opinion, explaining that "this was not a treating relationship," "the examination was limited in duration to a single hour," "Dr. Wagner did not specify what medical records he reviewed" and "did not cite to any medical records in his report[,]" Dr. Wagner "relied heavily upon his assessment" that the plaintiff had Somatic Symptom Disorder "due to chronic pain resulting from physical impairments[,]" and Dr. Wagner

"did not provide any insight into the [plaintiff]'s specific abilities and limitations, but instead opined that [he] could not sustain gainful employment." *Id*. at 882.

The plaintiff contends that none of the ALJ's stated reasons for giving little weight to the Wagner opinion is supported by substantial evidence, given that (i) Dr. Wagner did cite specific record evidence, namely, an emergency room record that described the plaintiff as agitated and uncooperative and a January 2014 report of Patricia Kolosowski, Ph.D., indicating that the plaintiff's daily activities did "'not attain the productive or reliability level needed to gain or maintain gainful employment[,]'" Statement of Errors at 8 (quoting Record at 855), (ii) the fact that Dr. Wagner conducted only a one-hour interview and testing was not a good reason to accord his opinion less weight than that of Dr. Claiborn, who did not even examine the plaintiff, *see id*., (iii) Dr. Wagner's opinion was not conclusory but, rather, cited to his findings on examination, including that the plaintiff's IQ level fell within that of the lowest two percent of the population, the plaintiff made an error in giving his own date of birth, and the plaintiff was able to work as an automobile mechanic when it was "possible to 'work on cars' without being able to read or write, and without the more currently common sophisticated diagnostic procedures[,]" *id*. at 8-9 (quoting Record at 856), and (iv) Dr. Wagner was qualified as a psychologist to assess the effects of chronic pain on daily functioning, *see id.* at 9.

On the other hand, the plaintiff argues that the ALJ erred in according great weight to the Claiborn opinion when (i) both the ALJ and Dr. Claiborn made the unsupported finding that he was able to perform his automobile mechanic job without accommodation for his intellectual disability, (ii) Dr. Claiborn's uncertainty that the IQ score assessed by Dr. Wagner was valid earlier in the plaintiff's life was unwarranted, (iii) as a result of that uncertainty, Dr. Claiborn "opined that the adaptive deficits noted by Dr. Wagner did not cause the degree of limitation opined by Dr.

8

Wagner because they were all caused by [the plaintiff's] inability to read and write[,]" and (iv) Dr. Claiborn failed to provide specific examples and citations to medical records in support of his opinion that there was no evidence that the plaintiff was significantly impaired in caring for himself, preparing his own food, finding his way from one place to another, or handling social interactions. *Id*. at 9-10.

This amounts to an unavailing invitation to the court to reweigh the evidence. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

First, as the commissioner observes, *see* Opposition at 15, any reservations that Dr. Claiborn had about the validity of the IQ score assessed by Dr. Wagner are immaterial. The ALJ accepted the validity of that IQ score and, on that basis, deemed the plaintiff to have met the first of the three criteria of Listing 12.05(B). *See* Record at 875. At oral argument, the plaintiff's counsel contended that Dr. Claiborn's reservations about his client's IQ score colored his findings regarding the plaintiff's adaptive functioning. However, as the commissioner's counsel rejoined, no such taint is evident from Dr. Claiborn's testimony. In discussing the plaintiff's adaptive functioning, he focused on the plaintiff's track record of performing such activities as working, shopping, and managing his finances. *See id*. at 917-19.

Second, the ALJ's decision to accord the Claiborn opinion great weight is supported by substantial evidence. Dr. Claiborn acknowledged that the plaintiff's functional illiteracy necessitated that he be read instructions to pass his driver's license test and accomplish certain work as an automobile mechanic. *See* Record at 918, 920-22. However, he testified that this was not an adaptive difficulty but, rather, the product of an inability to process written information.

9

*See id.* at 920-22. The plaintiff's suggestion that this was an erroneous conclusion, *see* Statement of Errors at 10, invites the court to substitute its judgment for that of Dr. Claiborn, an expert familiar with the requirements of Listing 12.05.

Beyond that, Dr. Claiborn cited examples in support of his conclusion that the plaintiff had no more than moderate limitations in adaptive functioning, including that the plaintiff had a history of holding down a job, could prepare meals, and could shop. *See id.* at 917. And, as discussed above, the ALJ made her own findings based on her detailed review of the record evidence concerning the plaintiff's demonstrated level of adaptive functioning.

These findings, in turn, constituted a proper basis on which to conclude that the plaintiff had failed to carry his burden of demonstrating that he had the level of deficits in adaptive functioning required to meet Listing 12.05(B)(2). As the commissioner observes, *see* Opposition at 14, the plaintiff's level of adaptive functioning in this case is similar to that of the claimant in *Libby v. Astrue*, No. 2:10-cv-292-JAW, 2011 WL 2940738 (D. Me. July 19, 2011) (rec. dec., *aff'd* Aug. 24, 2011), *aff'd*, 473 F. App'x 8 (1st Cir. 2012), who had obtained a driver's license, although there was no evidence she obtained it without special assistance, drove, was able to perform household tasks such as cooking and cleaning, engaged in leisure activities such as watching television, and could manage money, although she could not pay bills, *see Libby*, 2011 WL 2940738, at *11. On those facts, this court concluded that, although "the evidence as a whole d[id] not compel a conclusion that the [claimant] failed to meet the capsule definition of Listing 12.05[,]" it "permit[ted] that conclusion." *Id.* at *12. The same is true here.

The ALJ, hence, supportably accorded the Claiborn opinion great weight.

On the flip side, I find no reason to disturb the ALJ's decision to afford the Wagner opinion little weight. That Dr. Wagner had conducted a one-time examination of the plaintiff was a valid

reason to discount his opinion, despite the fact that Dr. Claiborn had not examined him at all. The ALJ supportably gave greater weight to the Claiborn opinion on the basis that "he was in the unique position of having reviewed the medical evidence of record in its entirety, while also having an understanding of agency rules and regulations." Record at 876; *see also, e.g.*, 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

That Dr. Wagner did not specify the medical records he had reviewed likewise was a valid reason to accord his opinion less weight. *See, e.g.*, 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). As the commissioner argues, *see* Opposition at 5-6, specificity concerning the records reviewed was particularly important here because Dr. Wagner's opinion postdated the plaintiff's date last insured by approximately four years. Indeed, the two records specifically mentioned by Dr. Wagner postdated the plaintiff's date last insured: an October 8, 2012, emergency room record and the January 2014 report of Dr. Kolosowski. *See* Record at 329-34, 387-90, 855. While Dr. Wagner checked the "yes" box in response to the question whether the impairments he assessed had existed since June 2011, he offered no explanation why. *See id*. at 863.

Finally, the ALJ supportably accorded the June 8, 2015, Wagner opinion little weight on the basis that, although the plaintiff had no severe physical impairment as of his date last insured for SSD benefits, June 30, 2011, Dr. Wagner "relied heavily" on his assessment that the plaintiff had "Somatic Symptom Disorder due to chronic pain resulting from physical impairments." *Id*. at 882. The ALJ reasonably characterized this as "a significant factor" in Dr. Wagner's opinion, *id*., which Dr. Wagner himself summarized as follows: "Based on the confluence of intellectual

11

disability, chronic pain (Somatic Symptom Disorder), and Major Depression, [the plaintiff] is unable to gain or sustain gainful employment[,]" *id*. at 857.

The ALJ's decision to accord little weight to the Wagner opinion, hence, survives scrutiny.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within forty-four (44) days after being served with a copy thereof.[7]  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of March, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[7] Federal Rule of Civil Procedure 72(b)(2) provides for a 14-day objection period.  The Court, however, recently extended by 30 days any deadline between the date of the order (March 18, 2020) and May 1, 2020. (General Order 2020-2.)